This is Continental Casualty Company and Valley Forge Insurance Company v. Winder Laboratories and Stephen Pressman. Laurie Webb Daniel is here for the Appellants and Cross Appellees. James William Cobb is here for the Appellees. And Ms. Daniel, you may begin when you're ready. May I please report, I'm Laurie Webb Daniel representing the Appellants and Cross Companies. The appeal before the court presents a very important issue to both insurance companies and insureds in the state of Georgia. The issue is whether the district court erred in a 2004 ruling that bars enforcement of a reservation of rights letter that the insured accepted to pay the defense cost of the insured subject to reimbursement regarding claims not covered. How did the insured accept it? They just didn't respond. No, Your Honor, they actually signed it. They actually, in this case, and this is important because it distinguishes this case from the one it relies on, this involved a sophisticated litigant, a pharmaceutical company. They were given a very explicit reservation of rights letter. It's 14 pages long. It addresses specifically the assertions in the underlying complaint that was filed by another competitor, Concordia, against Winder, which is the insured. It goes through the policy provisions, including exclusions, specific exclusions, including the one that the district court ruled on here. And it then gave an election, an opportunity for the insured to make a choice whether they counsel of the insured's team or not. So this is not a situation where an insurer is asking a sophisticated litigant to take their designated counsel. This was an option that Winder accepted and signed and signed. And there were several of them, each one incorporating by reference the initial one, which was very explicit. I could go through the specific terms, Your Honor, but they're attached as Exhibit H to the complaint for declaratory relief. That's in Volume 3, I think it's 1-8. But the error here, and I touched on it a little bit, there are two errors here that the district court made. First, as I mentioned, district court considered this a unilateral reservation of rights letter without considering the undisputed facts or even looking at the actual signature. And it's not. It's a bilateral offer and acceptance by a sophisticated litigant to sign the document and thereby obtain counsel of choice, venerable, rather expensive law firm. And the insurance company relying on that acceptance, acknowledgment, paid a lot of money. Well, isn't the insurer the more sophisticated party who drafted the initial contract itself? I mean, it seems to me like the simple answer is just to put a clause in the contract that provides for recoupment of fees and costs if they're determined later to be uncovered rather than spring it on the insurer in the middle of the case and placing them in a difficult situation. No, Your Honor, this was addressed in our briefs. The policy did not allow coverage for this claim, and so it's not in the policy. It's not necessary to put something in the policy if the policy is clear it doesn't cover this, and that was later determined. But moreover, this involves fundamental principles of Georgia law. No Georgia case has decided this specific issue, but Georgia law is very much in favor of enforcing what you've got to offer and acceptance. Well, let me ask you a question regarding that. I'm trying to create work for the Georgia Supreme Court. Is this not a case where we should perhaps certify, and no one's asked for it, but is this a case where we should opine and predict what Georgia law is going to do in the future, or is it best to certify this question of law to the Georgia Supreme Court? Your Honor, I would submit that you can decide this because of the established principles of Georgia law of offer and acceptance. But do we have to predict Georgia law, or do we even have to go there? There's not a case exactly on point, but the case law that we cited, Georgia law, even in the insurance context, is very supportive of our position in this offer and acceptance. Alternatively, unjust enrichment, I think, frankly, we have an express contract here because there was a signature, there's very strong Georgia law of implied contract. If you have an insurance, you accept the benefits that are given subject to... What's the consideration that would be supporting this contract? Well, for example, Winder got to choose their own counsel. They got to choose Venable. And Continental Casualty or Valley Forge Insurance paid a lot more than if this was a unilateral reservation of rights where it's just forced on them. They agreed. They made an election. That's consideration. And then also, as far as policy goes, Judge Wilson, of course, policy is important. But the policy that this report cited, again, goes to... It's a minority view. And it's based on the assumption that it's a situation where there's unilateral reservation of rights, not a signature, not an acceptance, not a choice, an election by the insured to How is it a minority view? My count, the jurisdictions are evenly split. Well, Your Honor, I haven't done an exact count, but I do think that if you look at the cases cited in our footnotes, lengthy footnotes, so, you know, they're there for you to look at. And also the trend. If you look at the Nautilus case out of Nevada, it explains the difference between a unilateral reservation of rights and what we have here. And the policy here actually favors the insurance company because Georgia law does not favor a windfall. And that's exactly what Winder wants. Again, if you look at the reservation of rights, it shows 14 pages. Look at page 2. It expressly and clearly and unambiguously says, if you get page 2 and then also in page 12 where it talks about retaining the counsel of their choice, they say, if you want that, you want to do that, okay, but if it's not covered, we're going to seek a reimbursement cost. Let me ask you a question, a very hypothetical question. If we agreed with you, what would you be seeking to have this opinion say? Would we simply be saying that any insurance company who sends out such a reservation of rights letter and says we're going to seek reimbursement in the event that none of these are covered claims or because that's what the next person is going to argue, or would we be saying limited to the facts and circumstances of this case because this was actually the insured signed it, it was 14 pages, it was, in fact, it rose to the level of a separate contract? Your Honor, I would suggest that you look at what we have here, where we have a bilateral contract and, you know, we've got a very clear 14-page reservation of rights that explicitly it does the analysis in depth. So this was noticed, and that's what's important, is notice to the insured, and that's the case before you. There's no reason for you to write anything expansive, but where you have a case like this that is supported with principles of Georgia law and offer an acceptance, and there's no reason to think that Georgia would not follow the majority, what I'll call the majority view, but at least, like, if you look at the rulings of Florida, coming out of Florida, offer and acceptance is key, and if someone accepts the benefits, and that's consistent with Georgia law in other types of reservation of rights. If you accept those benefits, there's at least an implied contract, I think an express contract. Let me bring up another principle of Georgia law and tell me why the principles of Georgia contract law that you're talking about are not in conflict with the principles of Georgia insurance law, which we all know that under Georgia law, there is a very broad duty to defend. And so if that exists, and it's broader than the duty to indemnify, how are you not, you're not reducing the duty to defend by saying we have that, we have to defend you, we think arguably there might be coverage, but now you're coming in after the fact and trying to rewrite the insurance agreement. Right. And I think this goes partly to the question of what is a potentially covered claim. Just filing a DEC action, trying to get an adjudication does not mean that the insurance company believes there was any coverage in the first place. They're doing the right thing. Under the Hoover case, that's what they're supposed to do, not just flat out deny. And that's what happened here. They didn't think there was coverage. And in the end, it turned out there wasn't with regard to at least the third amended complaint and the fourth amended complaint. And so they did the right things. What the term potentially covered claim means, it's a term of art. It's a term of art that means if you've got a complaint that's maybe ambiguous, vague, or incomplete. So on the face of the complaint, when compared to the language of the policy, it's not clear that there's no coverage. That's what a potentially covered claim is. It doesn't mean whether the insurer was, you know, had questions. And that's explained in the auto owners case that we cited at page, I don't know, maybe it was page 26, but it's auto owners. It goes and it contrasts a situation where the unambiguous language of the underlying complaint when compared to the unambiguous language of the policy shows, negates, negates coverage. It just says there's no coverage there. And that's what the district court judge eventually did when denying duty to defend. In that situation, there's never a potentially covered claim, a claim such as that. And I think that hopefully answers your question. I'm into my rebuttal time, so, you know, I'd like to save the rest, if that's all right. Thanks. All right. Thank you, Ms. Daniels. And Mr. Cobb, you may proceed. Thank you, Your Honors. James Cobb for Appelee's Cross-Appellants, Winder Laboratories, and Stephen Pressman. May it please the Court. I heard the insurers make a strident argument that the reservation of last letters here formed a bilateral contract. I think Ms. Webb Daniels actually said an express contract. I want to read something to the Court from the district court summary judgment order on the reimbursement issue, which is document 93 in this case. This is from page 12. Plaintiffs do not contend that such letters operate as a separate express agreement. There was no evidence offered below in support of a contractual theory. No argument offered below in support of a contractual theory. And while I heard a lot of points about offer and acceptance and the importance of those issues under state law, Judge Branche pointed out the missing word from that argument, which is consideration. There are three things that are required to offer a contractual theory law. Not just offer and acceptance, but also consideration. And even if the insurers had not waived this argument and had offered evidence of consideration below, Well, the consideration, she argues, is that they got to choose counsel. Why isn't that consideration? Because under Georgia law, for it to be consideration, the insurers had to give up something, or Winder had to get something of value to which it was not otherwise entitled. The insurance policy here, some CGL policies do provide that the insurance company has the right to dictate counsel. This policy doesn't. It was silent on that. And if you look, Your Honor, at the reservation letters, the very first reservation letter that is in the record, I want to read something to you about this particular issue. This is document 1-8. It's in front of the district court. It's on page 12 of the letter. This is what the insurers wrote. VFI will retain defense counsel to represent Winder in the Georgia suit. Alternatively, Winder can retain counsel of its choice. If Winder elects to retain its own counsel, please let us know who will be representing Winder in this matter, and please be advised that VFI, the insurance company, will only reimburse necessary and reasonable defense costs incurred by counsel on Winder's behalf as these powers have been retained by VFI to commensurate counsel in the Northern District of Georgia. So yes, ultimately, Winder should have been able to represent it. Counsel said, I think, to the court that that was a very expensive defense, perhaps more expensive than Winder might have otherwise received with traditional appointed counsel, but that's just not what the insurers told Winder. If you choose your own counsel, we're still just going to pay them what we would typically pay for defense counsel. And that letter, that portion of the reservation letter, is revealing because it is an example of the insurer not taking a position that it takes to handle this case. It didn't say, we have the right to choose defense counsel. It said, we'll either retain defense counsel for you or you can do it yourself. And that is not a position where, a situation where the insurer has given up something. The other form of consideration that the insurers suggest in their brief is the fact that Winder received a defense in the first place. But again, the contract here under Georgia law, as Judge Branch noted, imposes a very broad duty to defend, broader than the duty to identify, and the duty to defend is triggered anytime that a complaint even potentially triggers coverage. Not if it actually triggers coverage. There is no dispute in this case that at least under the first, the original complaint, first and only complaint, and the second amended complaint that concordantly filed, Winder was entitled to a defense. The district court found that, or made that point in its order on the motion for judgment on the pleadings that the insurers filed in this case. And I want to make sure the court is clear about what the reservation letters actually said. You don't have to take my word for what those letters say. You don't have to take Ms. Webb Daniel's word for what those letters say. I would encourage the court to read all of the letters because they are key to this case. They actually give this court an avenue for affirming Judge Story's summary judgment order without resolving the thornier question of whether insurers have a reimbursement right in every instance. If a reimbursement right exists, it has to be adequately reserved. And there is decades of Georgia case law cited by both parties about what it takes for a reservation letter to preserve an insurer's argument about a duty not existing. And I will explain why this is the case, but to sum it up at the forefront, the insurer's letters didn't do what's necessary here under Georgia law. The parties, we have, actually both parties, have relied on a case from the Georgia Supreme Court called Hoover v. Maxim Indemnification Company, 291-402. We've also relied on World Harvest Church v. Guideline Mutual Insurance Company, that's 287 Georgia 149. Both of those decisions from the Georgia Supreme Court say this, quote, at a minimum, this is the absolute minimum, the reservation of rights must fairly inform the insured that notwithstanding the insurer's defense of the action, and this is the really important language, it disclaims liability and does not waive the defenses available to it against the insurer. That's at page 152 of the World Harvest Church decision and page 416 of the Hoover decision. That same language appears in the Court of Appeals decision on which the insurers rely most heavily in support of their argument, the Jokori Systems case. It appears on page 513. And as I can explain, but as the Court can see for itself, not one of the reservation letters here disclaimed liability for the duty to defend. The letters are long, they're written like insurance companies write letters, but there is no statement in any of those letters to this effect. You've given us this case, you've asserted it has, it triggers our defense obligation, but we don't agree with you. Nevertheless, we are going to, out of an abundance of caution, provide you with a defense subject to our reservation of the right to ask a court to rule that we have no defense obligation. That's what they had to do under the Hoover case and the World Harvest case. That is nowhere in these letters. And we know that the insurers know how to disclaim liability because in their reservation letters they disclaimed it for particular claims. For example, if the Court looks at the third reservation letter or the fourth reservation letter, both of them have the same paragraph that I'd like to read to you. It says this. This is on page 2 of each letter. And both of those are in the District Court Record document 1-8. It says, VFI continues to provide you and Winder with a defense subject to a reservation of rights including the right to withdraw from the defense should any potentially covered claim be dismissed to the extent that counts 1 and 2 for false and contributory false advertising support a claim for the personal and advertising injury offensive libel slander or disparagement and or to the extent that the Georgia complaint does seek damages for a personal and advertising injury caused by an offense during the VFI and CCC policy periods VFI agrees to continue to provide you and Winder with a defense. But then listen to this next sentence. The remaining counts are not covered under the primary policy issued by VFI and the umbrella policy issued by CCC. So the insurers know  you've got to disclaim liability for something. But in Georgia, in order to avoid the duty to defend, there has to be no potential coverage at all. If a complaint has 25 claims in it in Georgia, even if one of those claims is just potentially covered, the insurers have an obligation to defend the entire case. And in order to meet the rules of Hoover and of World Harvest Church, what the insurers had to do here was say we don't think we have a duty to defend but nevertheless, we're going to ask the court to make sure that we're right on that point. They never told us that. And that answers the question that you all may be asking yourselves of why did my clients not object to the reservation letters? And then eventually why did the representative of my client sign the acknowledgement? That happened after the third reservation letter. And there's an easy answer to that question. There was nothing to object to. In Georgia, you object to a reservation letter if you disagree with what's stated in it. And if the insurer's reservation letter had said, for example, we don't have a duty to defend, my client would have objected. But the reservation letters never say that. And if you read these reservation letters, your honors, you will see it. So the distinction between a unilateral and bilateral reservation to be totally frank in Georgia is not very important here because under Georgia law, even if we just don't object to a unilateral reservation, we're still deemed to have a duty to defend. So the fact of signing a reservation letter doesn't add much to the debate. I don't dispute that my clients never objected to the reservation letter. The point is, they had no reason to because nothing in the reservation letters put them on notice. But the insurers believed that by providing a defense in the underlying case, they were acting outside the scope of the contract. And that, if your honor reads, I understand these briefs cite a lot of cases from all over the country. I've read all of them. And if your honor reads the cases the insurers rely on to support a claim for reimbursement, what you'll see is the courts, by and large, rely on an equitable concept, that it's kind of fair in an instance where the insurer says up front, I don't have a duty to defend, but I'm still going to do it, and I'm going to ask the court to relieve me, to make clear that I don't have it. And in that context where the insured is on notice of what exactly the insurer's position is, and, I apologize, this is key, on notice of the fact that the insurer believes it's acting outside the scope of the contract. If the insured knows those facts and then accepts the defense, it feels a little fairer to require reimbursement if it turns out that the insurer is correct. Here, my client was never on notice that the insurer believed it was acting outside the scope of the contract by providing a defense. And again, you don't have to trust me for that. You can read the reservation letters yourself and come to your own conclusion. Do we have a situation where we have a minority and a majority view? I think at one point, we did, but we don't anymore. We undertook a 50-state survey as we were preparing our principal brief, and while I can't represent to the court that I did that research myself, I had help of capable lawyers in my office to do it. I've reviewed all the results. I think the line is pretty evenly split. I also note, there are now six courts in Georgia, all federal courts, that have addressed the question of reimbursement under Georgia law. We haven't found any state court that's addressed the question. And as we pointed out in the notice of supplemental authority that we filed earlier this week, of those six courts, five of them have come to the conclusion that a reimbursement theory is just inconsistent with Georgia law generally about the obligations of an insurance company. One district court came to the opposite conclusion, and that's a decision by Judge Forrester in the Northern District, and if the court reads it, you'll see that there's no analysis about these unique aspects of the duty to defend in Georgia. In preparing for oral argument, I always make an effort to go around in connection with preparing the briefs, and so I read all the cases cited by the insurers, read all the cases that we had cited, and found a distinction that I hadn't noticed the first time around. In every single case in which a court recognized a right to reimbursement, the court also concluded that the duty to defend never arose in the first place, meaning with the original complaint, the allegations of that complaint so unambiguously excluded coverage that there was never a duty to defend. Our case doesn't involve that situation. The duty to defend arose. Judge Storey recognized it. The insurers at least implicitly conceded it in their reservation letters as we've pointed out in the briefs. And then, subsequent developments in the case caused Judge Storey to conclude, we think erroneously, that the duty to defend was extinguished. There are no cases that we have found in which a court recognized a right to reimbursement where the duty to defend initially arose and then subsequently was extinguished. By contrast, we, Your Honors, have cited a number of decisions in which exactly that happened. For example, the Hugo Boss decision from the Second Circuit Court of Appeals. Actually, most of the reimbursement cases on which we rely, if you read those cases, involve a scenario in which there originally was a duty to defend. And then later on, that duty was extinguished. With my remaining time, I'd like to address one point from the insurer's reply brief that we haven't had a chance to respond to, obviously. And that question is whether Judge Storey's order extinguishing the duty to defend was effective at the moment it was rendered or rather at the time that Concordia filed the third amended complaint in the underlying case. Insurers have said that Judge Storey found that the complaint unambiguously excluded coverage and thus that order extinguished the duty at the time the third amended complaint was filed. But, Your Honor, that's wrong. The insurers are referencing a standard in Georgia for when a complaint never gives rise to the duty to defend. And that is that it unambiguously excludes coverage. Judge Storey's order never uses those words. And we know that he didn't conclude the complaint itself unambiguously excluded coverage because he had to look outside the complaint in order to resolve the coverage dispute. My time is up. May I finish my point? I gave you another minute. Thank you. We know that Judge Storey had to look outside of the complaint to make the coverage determination here because in his order he explicitly referenced prior orders of his on motions to dismiss that Winder had successfully filed in the underlying case. You can see this at page 7, 9, and 10 of his order on the motion for judgment on the pleadings. And also, page 3 and page 9 to 10 of his order on the motion for reconsideration that we filed. Page 9 and 10 of the order on the reconsideration motion is very telling. I'd ask the court to look at it because what Judge Storey said in that portion of the order is that three concessions in the underlying case are crucial to understanding the underlying case's posture. That is very clear evidence that to resolve the coverage fight, Judge Storey had to look outside of the complaint. And that's a classic coverage determination, which under Georgia law is effective at the time it was made. So the duty here existed until he rendered that decision. Unless the court has any additional questions, I appreciate your time. Alright, thank you. Mr. Cobb, Ms. Daniel, you have reserved some time for rebuttal. So, I guess I'll respond to some points not necessarily in the order, but I will start with the consideration issue because certainly the insurer did give up something. The insurer gave up use of its money, for example, during the time that it was funding these defense costs for uncovered claims. But how is that outside the scope of the original insurance agreement, especially because we have a duty to defend under Georgia law? Well, right, but it turns out there was no duty to defend as a matter of law on these claims. And if I may kind of segue into Not even if they're potential claims? Again, Your Honor, these claims cannot be considered to be potentially covered because under the analysis, if the policy language when compared to the allegations of the underlying complaint negate coverage for those claims, there never was any potentially covered claim. Potentially covered means if you've got an underlying complaint that is incomplete, maybe you can't tell, but it needs additional facts to make a determination of whether there's coverage, that is a potentially covered claim. But if the underlying complaint is compared to the language of the policy and it's shown that it's negated, no, you know, end of issue, then it's not potentially covered. And it never was potentially covered. Never. And that goes to the timing of, you know, these claims and the third amended complaint and the fourth amended complaint were never potentially covered. Now, there was mention of Let me ask you a question. I asked you a question when you were first up here. What happens if you win? What happens if you lose? What happens if we say there is no consideration to this letter? Where do we go with if we want to make that determination, if we do? Well, I mean, if you make the determination that there's no consideration, it's, you know, you rule against us. But if we say that this Reservation of Rights letter is not supported by consideration, is there any way to prevailing that remains before you? Well, I think it's, you know, if you go to the Georgia law on our Reservation of Rights letters, you know, it's very strong. They don't push on this consideration when they say if you fail to object, and they've got even much lesser detailed Reservations of Rights letters. So, I think if you just look at the Georgia precedent on this, you'll see that this is much smaller, much smaller case than our precedent that says there's a lack of objection so there's an implied contract. They accepted the benefits and that's what we have here. So I do think under those precedents, surely this establishes... consideration to the Reservation of Rights letter. Is there a path to prevailing for you? I would say, Your Honor, I, again, if you look at the cases where you've had implied, you know, contracts found. Right. This is my hypothetical, is we say no. They don't. No, but this is my hypothetical. Is there a path to victory for you? I don't think those cases require the type of... Again, I want you to engage with my hypothetical. We go back, we find that there is no contract here, implied, express, otherwise. Is there a path to victory for you? Georgia law is the unfair enrichment and again, that is a well established principle of Georgia law. Even if there's not a contract, you've got the unjust enrichment deeply embedded in Georgia law. On this question about whether they were on notice, I mean, again, yes, please do read all of these, but there was repeated and explicit disclaimer of waiver of anything. They made it very clear that they were preserving their right and they were acting in an abundance of caution, which is what an insurance company is supposed to do. So this company is being punished for doing the right thing, for following Hoover and saying, okay, yes, we have doubts, we have doubts. They made it very clear. We're not waiving anything. We're going to give you the benefit of defense of your choice, your counsel. Just because you're asking for little work to come within reasonable guidelines doesn't mean that that was not something important to this insured winder wanted to be able to manage and control. Insurance companies really, I mean, they want to defend these in order to avoid a bad faith claim later in the event that there is cover. Absolutely, Your Honor, and if I may just respond to that, and I know I'm past I'll wrap it up. The policy underlying the, and I'm just going to call it minority view, but I do think that the recent trend is actually going the way Florida did. But the thought there is you've got a self-interested insurer and they are not giving the insured the opportunity to retain their own counsel. So they're just not going to do a great job. It's all in their own interest. That's not what we have here. They gave the insured the right to retain their own counsel, which they paid for, ran up a lot of expenses. They paid for it. They allowed the insured to manage their litigation, take control of these costs. So it's just not that same situation. I think when you look at the policy reservation rights, you'll see that they did make clear, gave plenty of notice, that this was subject to request for reimbursement, and that the NRI case, which was Judge Forster's case, very lengthy, very well-reasoned opinion. I think, frankly, many of the others are dealing with unsophisticated lawsuit case. It was just an individual. The ROR was forced on him. That fits in that box, but this one does not. We ask the Court to reverse. Thank you. Thank you, Ms. Daniel and Mr. Cobb. The Court will be in recess for 15 minutes. Thank you.